IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KIM MORGAN WILKES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV260 |
| | ) | |
| FRANCISCO ARGUETA, a/k/a FRANCISCO | ) | |
| ROTUI, a/k/a FRANCISCO ROMERO, | ) | |
| ALDO DIPUORTO, MARIA DIPUORTO, | ) | |
| and THE ALDO DIPUORTO and MARIA | ) | |
| DIPUORTO PARTNERSHIP, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff initiated this action on March 23, 2016, in state court, alleging retaliation in violation of 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), as well as various state law claims. (ECF No. 7.) Defendants timely removed the action to this Court. (ECF No. 1.) Before the Court is Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6). (ECF No. 15.) For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## I.    BACKGROUND

Defendants Aldo DiPuorto, Maria DiPuorto, and the Aldo and Maria DiPuorto Partnership ("Defendant Owners") own and operate restaurants under the name "Elizabeth's Pizza," one of which is located in Thomasville, North Carolina. (ECF No. 7 ¶ 6.) Plaintiff was hired by Defendants Owners in 2002 as a Head Waitress/Waitress Manager, responsible for the supervision, training, and scheduling of waitresses at the restaurant. (*Id.* ¶ 7.) Plaintiff was also responsible for hiring waitresses and calculating their payroll. (*Id.* ¶¶ 7, 14, 22.)

Approximately six months after hiring Plaintiff, Defendant Owners hired Francisco Argueta ("Argueta") as the Kitchen Manager. (*Id.* ¶ 8.) Argueta also "served as the general manager of the restaurant whenever Defendant Aldo DiPuorto and/or his son, Gino DiPuorto,[1] were not present, which was most of the time." (*Id.*)

During her employment, Plaintiff, as Waitress Manager, received numerous complaints from waitresses at the restaurant "that Argueta engaged in sexually harassing conduct toward them and others." (*Id.* ¶ 11.) Plaintiff notified Defendant Owners about these complaints "many times over the years." (*Id.* ¶ 13.) Plaintiff also notified Defendant Owners about various other incidents that she witnessed, "either in person or on video recorded in the restaurant," in which Argueta "engaged in inappropriate physical activity with different waitresses." (*Id.* ¶¶ 12, 13.) Defendant Owners ignored Plaintiff's complaints and "took no action to discipline Defendant Argueta or restrain him from continuing to engage in such activity." (*Id.*)

On or about July 15, 2013, Plaintiff hired Jeanette Kennedy ("Kennedy") as a waitress. (*Id.* ¶ 14.) Immediately upon being hired, Kennedy began to complain to Plaintiff about sexual comments made to her by Argueta. (*Id.*) Kennedy "also complained that Argueta made hand gestures like he was masturbating in front of her." (*Id.*) Plaintiff "saw video footage of [this] event" when she later viewed the restaurant's surveillance video.[2] (*Id.*) Approximately one

---

[1] Gino DiPuorto is the son of Defendants Aldo and Maria DiPuorto, and Plaintiff alleges that he "was an employee, general manager and agent of the Defendant Partnership," (ECF No. 7 ¶ 5).

[2] In her role as Waitress Manager, Plaintiff had the authority to access and view the restaurant's surveillance video footage on her office computer. (ECF No. 7 ¶ 14.) Plaintiff was subsequently stripped of this access after complaining to Defendant Owners about Argueta who was captured on

week after hiring Kennedy, on or about July 22, 2013, Plaintiff received another complaint from Kennedy about Argueta's conduct. (*Id.* ¶ 15.) Plaintiff confronted Argueta, with Kennedy present, and told him that his conduct "was inappropriate and that he needed to stop." (*Id.*) In response, Argueta told both Kennedy and Plaintiff that they "needed to get laid so that [they] would be in better moods." (*Id.*) (alteration in original).

Less than one week later, on or about July 28, 2013, Argueta "slapped Kennedy on the buttocks which hurt Kennedy and left a mark." (*Id.* ¶ 17.) Kennedy reported this incident to Plaintiff who, in turn, reported the incident to Defendant Owners. (*Id.*) Also on July 28, 2013, Argueta accused Kennedy of stealing a tip left for another waitress, "and made other derogatory comments about Kennedy, urging Plaintiff to fire [Kennedy]." (*Id.* ¶ 18.)

A few days later, on or about August 1, 2013, Kennedy quit her job at the restaurant and filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant Owners. (*Id.* ¶ 20.) Kennedy also "initiated a criminal complaint against Defendant Argueta" in Davidson County.[3] (*Id.*) On May 28, 2014, Plaintiff provided an executed Affidavit in Kennedy's EEOC charge investigation in which Plaintiff discussed "the fact that numerous waitresses at the restaurant had complained about Argueta's sexually harassing conduct and that Plaintiff had informed and complained to Defendant Owners regarding Argueta's conduct." (*Id.* ¶ 24.) On May 30, 2014, Defendants

---

video "harassing and physically molesting another young waitress working at the restaurant." (*Id.* ¶¶ 14, 22.)

[3] Argueta ultimately entered into a Deferred Prosecution Agreement ("Agreement") in *State v. Francisco Romero Argueta a/k/a Francisco Rotui*, Case No. 13-CR-54779. As part of the Agreement, Argueta agreed to probation, community service, and attendance at a sexual harassment/hostile work environment class. (ECF No. 7 ¶¶ 20, 29; ECF No. 17 ¶ 29.)

3

were notified about Plaintiff's submission to the EEOC. (*Id.*) Around the same time, "Defendants also learned that Plaintiff had cooperated with law enforcement in their investigation of the criminal matter initiated by Kennedy and that [Plaintiff] had agreed to serve as a witness and give testimony for the prosecution in that matter." (*Id.* ¶ 25.) Shortly thereafter, "Plaintiff overheard Defendant Aldo DiPuorto and Gino DiPuorto . . . saying that they had to get rid of Plaintiff," and they began "acting angry toward her." (*Id.* ¶ 26.) Plaintiff was also threatened and repeatedly pressured by Aldo DiPuorto to "get Kennedy to drop her criminal charges." (*Id.*; *see id.* ¶ 21.)

On or about June 20, 2014,[4] Plaintiff was told by Aldo DiPuorto that he was traveling to Italy and, in his absence, she "was not to 'see anything' or 'say anything.'" (*Id.* ¶ 27.) Following Aldo DiPuorto's departure, Plaintiff confronted Argueta about another complaint she received from a waitress concerning "Argueta's sexually harassing conduct." (*Id.* ¶ 28.) Three days later, on June 23, 2014, Plaintiff was terminated, via telephone, by Argueta who told Plaintiff that "he had . . . spoken to Defendant Owners about her and that [she] was being terminated for raising issues and complaining about his sexually harassing conduct." (*Id.* ¶¶ 29, 30.)

On July 8, 2014, Plaintiff filed a Charge of Discrimination with the EEOC based on retaliation in violation of Title VII. (*Id.* ¶ 43.) The EEOC issued a determination, on September 30, 2015, finding reasonable cause to believe that Defendants had violated Title

---

[4] Plaintiff's Complaint lists this date as June 20, 2016, instead of June 20, 2014. This appears to be a typographical error, given the chronology of events in Plaintiff's Complaint as well as Defendant's Answer which states that Aldo DiPuorto left for Italy in June 2014, not June 2016. (*See* ECF No. 17 ¶ 27.)

VII. (*Id.* ¶ 43; ECF No. 17 ¶ 43.) The EEOC also issued a Notice of Right to Sue on December 31, 2015. (ECF No. 7 ¶ 43; ECF No. 17 ¶ 43.) Plaintiff then filed the instant lawsuit seeking compensatory and punitive damages, as well as injunctive relief. (ECF No. 7 at 10.) Defendants filed an Answer to Plaintiff's Complaint, (ECF No. 17), and subsequently moved to dismiss this action for failure to state a claim, (ECF No. 15).[5]

## II. STANDARD OF REVIEW

A motion to dismiss made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint may fail to state a claim upon which relief can be granted in two ways: first, by failing to state a valid legal cause of action, *i.e.*, a cognizable claim, *see Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012); or second, by failing to allege sufficient facts to support a legal cause of action, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). Dismissal under Rule 12(b)(6) is only appropriate "when the complaint 'lacks a cognizable legal theory or sufficient facts to support a cognizable legal

---

[5] Where, as here, Defendants have filed an Answer, a Rule 12(b)(6) motion "should be viewed as a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). As a practical matter, a Rule 12(c) motion is analyzed "under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013).

theory.'" *Capital Associated Indus., Inc. v. Cooper*, 129 F. Supp. 3d 281, 300 (M.D.N.C. 2015) (quoting *Brown v. Target, Inc.*, No. ELH-14-00950, 2015 WL 2452617, at *9 (D. Md. May 20, 2015)).

On a Rule 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true, *Iqbal*, 556 U.S. at 678, and construe all factual allegations in the light most favorable to the plaintiff, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "Although the Supreme Court has . . . made clear that the factual allegations in a complaint must make entitlement to relief plausible and not merely possible, . . . '[w]hat Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations.'" *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (internal citations omitted) (alteration in original) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

## III. DISCUSSION

### A. Retaliation in violation of Title VII (Claim 3)[6]

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Before a plaintiff files suit under Title VII, she must exhaust her administrative remedies which requires that she, first, file a charge with the EEOC. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). A plaintiff's failure to exhaust administrative remedies deprives the court of subject matter jurisdiction over the claim. *Jones*

---

[6] Defendants removed this action from state court to this Court based on federal question jurisdiction under 28 U.S.C. § 1331. (ECF No. 1 ¶ 3.) Accordingly, the Court will, first, consider whether Plaintiff's federal claim should be dismissed pursuant to Rule 12(b)(6).

*v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). The parties here do not contest that Plaintiff has exhausted her administrative remedies with respect to her Title VII retaliation claim. (*See* ECF No. 7 ¶ 43; ECF No. 17 ¶ 43.) The Court therefore has subject matter jurisdiction over Plaintiff's Title VII retaliation claim.[7]

In order to establish a prima facie case of retaliation under Title VII, Plaintiff must allege: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012). "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, . . . [Plaintiff's] factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations and internal quotations omitted).

With respect to the first element of a retaliation claim, Title VII specifically prohibits an employer from retaliating against an employee because she has opposed an unlawful employment practice, "or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Thus, "in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *EEOC v. Navy Fed'l Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005).

---

[7] The existence of the Court's subject matter jurisdiction is a threshold issue which must be addressed before considering the merits of the case. *See Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999.)

Opposition activity is protected, not only when it is undertaken to oppose employment actions that are actually unlawful under Title VII, but also when it responds to "employment actions an employee *reasonably believes* to be unlawful." *Id.* at 406 (emphasis added). Employees are "guaranteed the right to complain to their superiors about suspected violations of Title VII." *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543–44 (4th Cir. 2003). In addition, participation activities (including making a charge, testifying, assisting, or participating in any manner in a Title VII investigation, proceeding, or hearing, *see* 42 U.S.C. § 2000e-3(a)), "are vigorously protected to ensure employees' continuing access to the EEOC and the enforcement process," *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Accordingly, "the scope of protection for activity falling under the participation clause [of Title VII] is broader than for activity falling under the opposition clause." *Id.* at 259 n.4.

In this case, Plaintiff alleges that she participated in the EEOC's investigation of Kennedy's charge. Specifically, Plaintiff alleges that:

> On May 28, 2014, Plaintiff executed an Affidavit to provide relevant, truthful information regarding Kennedy's EEOC Charge, including the fact that numerous waitresses at the restaurant had complained about Argueta's sexually harassing conduct and that Plaintiff had informed and complained to the Defendant Owners regarding Argueta's conduct. On May 30, 2014, Defendants were notified that Plaintiff had submitted the Affidavit. (ECF No. 7 ¶ 24.)

The Court finds that this allegation of Plaintiff's participation in the EEOC investigation of Kennedy's charge constitutes a protected activity under Title VII which satisfies the first element of Plaintiff's retaliation claim.

As to the second element of Plaintiff's retaliation claim, Defendants do not contest that Plaintiff was terminated by Defendant Owners on June 23, 2014. (*See* ECF No. 17 ¶ 30.) Nor do Defendants contest that Plaintiff's termination constitutes an adverse employment action. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) (finding that plaintiff's "termination indisputably constituted adverse employment action"); *see also Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) ("Adverse employment actions include any retaliatory act or harassment if that act or harassment results in an adverse effect on the terms, conditions, or benefits of employment."). Thus, the second element of Plaintiff's retaliation claim has been satisfied.

Plaintiff may satisfy the third element of a Title VII retaliation claim by sufficiently alleging that there is close temporal proximity between the adverse employment action and the protected activity. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (discussing that close temporal proximity may be "strongly suggestive of retaliatory motive and thus indirect proof of causation"). Although the Fourth Circuit has not adopted "a bright temporal line," the court has held that a lapse of three or four months "between the protected activities and discharge was 'too long to establish a causal connection by temporal proximity alone.'" *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (unpublished) (quoting *Pascual v. Lowe's Home Ctrs., Inc.*, 1993 F. App'x 229, 233 (4th Cir. 2006) (unpublished)).

Plaintiff alleges in the Complaint that, on May 28, 2014, she executed an Affidavit in Kennedy's EEOC charge investigation. (ECF No. 7 ¶ 24.) Plaintiff further alleges that, on May 30, 2014, Defendants were notified of the fact that she had executed an Affidavit, (*id.*), and she was terminated on June 23, 2014. (*See* ECF No. 17 ¶ 30.) Thus, there was

approximately one (1) month between the most recent date of Plaintiff's alleged protected activity and the adverse employment action. Courts have found very close temporal proximity where two months or less lapsed between the alleged protected activity and the adverse employment action. *See, e.g.*; *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (stating that plaintiff "tend[ed] to show causation" where her evidence shows that she engaged in protected activity "just a month before she was terminated"); *King*, 328 F.3d at 151 n.5 (holding that a time period of two-and-a half-months between the protected activity and an adverse employment action was sufficiently close to make a prima facie showing of causation solely based on temporal proximity); *Carter*, 33 F.3d at 460 (finding sufficient temporal proximity where adverse employment action occurred six weeks after participating in an EEOC hearing); *Fleming v. S.C. Dep't of Corrs.*, 952 F. Supp. 283, 288 (D.S.C. 1996) (holding that plaintiff's transfer one month after engaging in protected activity was "strongly suggestive" of retaliation). The Court finds that Plaintiff has satisfied the third element of her retaliation claim by sufficiently alleging close temporal proximity between her protected activity and the subsequent adverse employment action.

Defendant argues, however, that Plaintiff's claim should nevertheless fail because her protected activity is not the "but-for" cause of her termination. (ECF No. 16 at 9–12.) As noted by the parties, the Supreme Court has clarified that to succeed on a claim of retaliation, a Title VII Plaintiff must also show that "her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). To prove "but-for" causation, Plaintiff must show "that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the

employer." *Id.* at 2533. While allegations showing close temporal proximity do not necessarily establish that Plaintiff's alleged protected activity was the "but-for-cause" of her termination, such a showing is not required at this pleading stage, in the absence of discovery and further development of the record. *See Westmoreland v. Prince George's Cty.*, No. TDC-14-0821, 2015 WL 996752, at *16 (D. Md. Mar. 4, 2015) (finding that, on a motion to dismiss, showing "but-for" causation between plaintiff's protected activity and the subsequent adverse action "is not necessary at this preliminary stage, when [plaintiff] has not yet had the opportunity for discovery"). At this stage in the proceedings, Plaintiff's showing of a temporal proximity of less than one month between submission of her Affidavit to the EEOC in its investigation of Kennedy's charge and her subsequent termination is sufficient to *allege* causation to survive Defendants' motion to dismiss. *See Coleman*, 626 F.3d at 190 (explaining that in order to survive a motion to dismiss, a plaintiff's factual allegations must be sufficient to "raise a right to relief above the speculative level") (quoting *Twombly*, 550 U.S. at 555).

The Court, therefore, concludes that Plaintiff has alleged sufficient facts to establish a plausible claim for relief as to her Title VII claim of retaliation. Accordingly, Defendants' motion to dismiss this claim will be denied.

### B. Tortious Interference with Contract against Defendant Argueta (Claim 1)

In North Carolina, a claim for tortious interference with contract will lie where Plaintiff shows the following:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the

> contract; (4) and in doing so acts without
> justification; (5) resulting in actual damage
> to the plaintiff.

*See Bloch v. Paul Revere Life Ins. Co.*, 547 S.E.2d 51, 59 (N.C. Ct. App. 2001) (quotation omitted). Such a claim also applies to at-will employment contracts. *See Smith v. Ford Motor Co.*, 221 S.E.2d 282, 290, 296 (N.C. 1976) (finding a cause of action for tortious interference with an at-will contract because, although an employment contract may be terminated at the will of either party, it may not be terminated at the will of a third party).

"For claims of tortious interference with a contract, North Carolina makes a distinction between defendants who are 'outsiders' and 'non-outsiders' to the contract." *Combs v. City Elec. Supply Co.*, 690 S.E.2d 719, 725 (N.C. Ct. App. 2010). An "outsider," as defined by the North Carolina Supreme Court, is

> one who was not a party to the terminated
> contract and who had no legitimate
> business interest of his own in the subject
> matter thereof. Conversely, one who is a
> 'non-outsider' is one who, though not a
> party to the terminated contract, had a
> legitimate business interest of his own in
> the subject matter.

*Smith*, 221 S.E.2d at 292. As a general rule, "'non-outsiders' [to an employment contract] often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee." *Lenzer v. Flaherty*, 418 S.E.2d 276, 286 (N.C. Ct. App. 1992). This qualified immunity is lost, however, "if exercised for motives other than reasonable, good faith attempts to protect the non-outsider's interests in the contract interfered with." *Id.* Therefore, to hold a "non-outsider" liable for tortious interference with contract, a plaintiff

12

must show that the "non-outsider" acted with legal malice, i.e., "without any legal justification for his action." *Varner v. Bryan*, 440 S.E.2d 295, 298 (N.C. Ct. App. 1994).

According to the Complaint, Plaintiff and Argueta were both employed by Defendant Owners at the same restaurant for at least 12 years (since approximately 2002). (ECF No. 7 ¶¶ 7, 8.) Argueta served as the restaurant's Kitchen Manager as well as "the general manager . . . whenever Defendant Aldo DiPuorto and/or his son, Gino DiPuorto, were not present, which was most of the time." (*Id.* ¶ 8.) As a manager at the restaurant, Argueta would be classified as a "non-outsider." *See Royal v. Goodyear Tire & Rubber Co.*, No. 5:12-CV-753-BO, 2013 WL 3357739, at *2 (E.D.N.C. July 3, 2013) (stating that managers are often considered "non-outsiders" because it is "presumed that they are acting on behalf of the employer and, therefore, are not complete 'outsiders' to the contract"). Plaintiff also alleges that Argueta acted "without justification" in causing her termination. (ECF No. 7 ¶ 34.) Specifically, Plaintiff alleges that:

> (i)      "Argueta called Plaintiff . . . and told her that he had called and spoken to Defendant Owners about her and that Plaintiff was being terminated for raising issues and complaining about his sexually harassing conduct," (ECF No. 7 ¶ 30);
>
> (ii)      "Defendant Owners terminated Plaintiff at Argueta's behest, for opposing the ongoing sexual harassment and gender discrimination by Defendants, for participating in and providing truthful information in a pending EEOC Charge regarding such unlawful activity, for cooperating with law enforcement in their investigation of the criminal matter, and for agreeing to provide truthful information in

the criminal proceeding initiated by Kennedy against Argueta," (*id.*);

(iii)   "Defendant Argueta wrongfully and intentionally, without justification, and solely for his own unlawful interests, induced the Defendant Owners to terminate Plaintiff's employment while Defendant Owners were not even in the United States," (*id.* ¶ 34); and

(iv)   "Defendant Argueta induced the termination of Plaintiff's employments [sic] for reasons of spite and personal ill will toward the Plaintiff, and with the purpose and intent to cause harm and injury to Plaintiff," (*id.*).

Taking Plaintiff's factual allegations as true, which is required at this stage in the litigation, Plaintiff has sufficiently stated a claim for tortious interference with contract by Argueta. The Court will therefore deny Defendants' motion to dismiss this claim.

### C.  Vicarious Liability of Defendant Owners for Tortious Interference (Claim 2)

Defendants argue that Plaintiff's second claim fails because "there cannot be vicarious liability against the employer for interfering with that employer's contract." (ECF No. 16 at 8.) Plaintiff, on the other hand, contends that Defendant Owners ratified Argueta's tortious interference with her employment contract, and are therefore vicariously liable. (*See* ECF No. 20 at 11–13.)

In North Carolina, an employer may be held vicariously liable for the tortious acts of its agents or employees when: (i) "the agent's actions are expressly authorized by the principal;" (ii) "the action is committed within the scope of the agent's employment and in furtherance of the employer's business;" or (iii) "the agent's actions are ratified by the principal." *Jackson*

14

*v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993) (citing *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 121 (N.C. Ct. App. 1986)). To establish ratification, Plaintiff must show that Defendant Owners "had knowledge of all material facts and circumstances relative to the wrongful act, and that the employer, by words or conduct, show[ed] an intention to ratify the act." *Hogan*, 340 S.E.2d at 122.

Here, Plaintiff alleges that the Defendant Owners, "with intent to ratify the wrongful conduct of Defendant Argueta, thereafter engaged in conduct designed to support and approve of such conduct, and did, in fact, ratify Defendant Argueta's wrongful and tortious conduct toward Plaintiff, by, *inter alia*, discharging Plaintiff . . . [and] joining in and conspiring to terminate Plaintiff in violation of the law." (ECF No. 7 ¶ 38.) Plaintiff therefore seeks to hold Defendant Owners vicariously liable for tortious interference with an at-will employment contract to which they are a party. In support of her argument that she has sufficiently stated a claim for relief against Defendant Owners, Plaintiff cites *Barker v. Kimberly-Clark Corp.*, 524 S.E.2d 821 (N.C. Ct. App. 2000). (*See* ECF No. 20 at 13.) In that case, the plaintiff alleged that a company manager had tortiously interfered with her employment contract by terminating her employment with the defendant corporation. *Id.* at 823–24, 826. There, the plaintiff also alleged that the defendant corporation had ratified the manager's tortious act by failing to take any corrective action after learning of the alleged tortious interference of the company manager. *Id.* at 827. On appeal, the North Carolina Court of Appeals reversed the lower court's grant of summary judgment in favor of the defendant corporation on the issue of ratification of the manager's alleged tortious interference with contract. *Id.*

As argued by Defendants, however, the federal district court in *Waters v. Collins & Aikman Prods. Co.*, 208 F. Supp. 2d 593 (W.D.N.C. 2002), found that the *Barker* decision, represented "what appears to be . . . a decisional aberration by [the North Carolina Court of Appeals]." *Id.* at 595. As explained by the court in *Waters*, state and federal case law interpreting North Carolina law "have held consistently that a party to a contract cannot tortiously interfere with that contract." *Id.*; *see Wagoner v. Elkin City Schools' Bd. of Educ.*, 440 S.E.2d 119, 124 (N.C. Ct. App. 1994) (noting that parties to a contract cannot be liable for interference with the contract); *Michaux v. Rexnord Corp.*, No. 1:01CV15, 2001 WL 1019852, at *1 (W.D.N.C. Apr. 9, 2001) (stating that "North Carolina law is most explicit that tortious interference with contract cannot be committed by a *party* to that contract").

This Court is persuaded by the reasoning of the court in *Waters* which found that, to allow a party to a contract to be held liable for interference with the contract would "fly in the face of well-settled and controlling precedents and common sense." *Waters*, 208 F. Supp. 2d at 596. Moreover, "[w]here a maker interferes with a contract, the cause of action is one for 'breach,' and there simply is no need to supplant, supplement, or duplicate that cause of action." *Id.* As a result, the Court concludes that, even accepting the allegations of ratification against Defendant Owners as true, Plaintiff has failed to state a claim for Defendant Owners' vicarious liability for tortious interference with a contract to which they are a party. The Court will, therefore, grant Defendants' motion to dismiss this claim.

### D. Wrongful Discharge against Defendant Owners (Claim 4)

Defendants argue that Plaintiff's wrongful discharge claim should be dismissed because

"Plaintiff's Complaint includes no facts to show she was terminated in violation of any public policy of North Carolina." (ECF No. 16 at 15.)

"North Carolina is an at-will employment state . . . [and] in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party." *Kurtzman v. Applied Analytical Indus., Inc.*, 493 S.E.2d 420, 422 (N.C. 1997). There are, however, limited exceptions to the state's at-will employment doctrine. One such exception is a wrongful discharge in violation of North Carolina public policy. *See Coman v. Thomas Mfg. Co.*, 381 S.E.2d 445, 447 (N.C. 1989). To state a claim for wrongful discharge in violation of public policy, an employee "has the burden of pleading . . . that [her] dismissal occurred for a reason that violates public policy." *Salter v. E & J Healthcare, Inc.*, 575 S.E.2d 46, 51 (N.C. Ct. App. 2003). "Public policy has been defined as the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good." *Coman*, 381 S.E.2d at 447 n.2. While this definition of public policy "does not include a laundry list of what is or is not 'injurious to the public or against the public good,' at the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos v. Oakdale Knitting Co.*, 416 S.E.2d 166, 169 (N.C. 1992) (footnote omitted).

Here, Plaintiff's Complaint alleges wrongful discharge in violation of the public policy of North Carolina as expressed in: (i) the North Carolina Equal Employment Practices Act,

17

("NCEEPA"), N.C. Gen. Stat § 143-422.2;[8] (ii) N. C. Gen. Stat § 95-151;[9] and (iii) state common law. (ECF No. 7 ¶ 45.) Plaintiff seeks to state a claim for wrongful discharge based on retaliation for opposing Defendant Owners' alleged sexual discrimination, and specifically alleges the following:

> (i)    that she was "ultimately discharged because she opposed, refused to participate or acquiesce in, and complained about gender discrimination in the workplace and the abusive and hostile work environment created by Argueta, and because she asserted and attempted to enforce her and the other waitresses' rights to be free of such conduct," (ECF No. 7 ¶ 45); and

> (ii)    that "Plaintiff's opposition to and refusal to participate in, acquiesce in or condone the ongoing unlawful conduct of Defendants, and her assertion of and attempts to enforce her rights to be free of such conduct, were a cause and motive of Defendants' decision to terminate Plaintiff," (*id.*).

While North Carolina has an express public policy against sexual discrimination, including sexual harassment, North Carolina does not have a public policy regarding retaliation for opposing sexual discrimination. In fact, courts addressing this issue have specifically held that "North Carolina has no written public policy . . . with respect to *retaliation for opposing sexual discrimination in the workplace*." *Efird v. Riley*, 342 F. Supp. 2d 413, 428 (M.D.N.C. 2004). *See,*

---

[8] The NCEEPA provides, in pertinent part, that "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, biological sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2(a).

[9] N.C. Gen. Stat. § 95-151 provides that "[n]o employer, employee, or any other person related to the administration of [the Occupational Safety and Health Act of North Carolina] shall be discriminated against in any work, procedure, or employment by reason of sex, race, ethnic origin, or [religion]. N.C. Gen. Stat. § 95-151.

*e.g., Mullis v. Mechs. & Farmers Bank*, 994 F. Supp. 680, 688 (M.D.N.C. 1997) (ruling that "[p]laintiff's claim for wrongful discharge in violation of public policy must fail because there is no North Carolina state law support for [p]laintiff's assertion that a retaliatory discharge arising from complaints of sexual harassment violates the public policy of North Carolina"); *Leach v. N. Telecom, Inc.*, 141 F.R.D. 420, 426 (E.D.N.C. 1991) (dismissing plaintiff's claim for wrongful discharge in violation of public policy because "[N.C. Gen. Stat. § 143.422.2] does not express a public policy concerning retaliation for opposition to discriminatory practices"). Accordingly, Plaintiff has failed to state a claim for wrongful discharge based on violation of a public policy against retaliation for opposing sexual discrimination.

Plaintiff also alleges, however, that:

> she was terminated "as retaliation for, among other things, cooperating with law enforcement in their investigation of the criminal matter [initiated by Kennedy against Argueta, and], for agreeing to provide truthful information in the criminal proceeding . . . . Such conduct by Owners is in contravention of the . . . public policy established by N.C.G.S. § 14-226 and the common law of North Carolina. (ECF No. 7 ¶ 46.)

N.C. Gen. Stat. § 14-226 prohibits the intimidation of, or interference with, witnesses in a criminal proceeding. Further, the North Carolina Court of Appeals has held that "[i]t is the public policy of this state that citizens cooperate with law enforcement officials in the investigation of crimes." *Phillips v. Gray*, 592 S.E.2d 229, 232–33 (N.C. Ct. App. 2004) (quoting *Caudill v. Dellinger*, 501 S.E.2d 99, 104 (N.C. Ct. App. 1998), *abrogated on other grounds by Newberne v. Dep't of Crime Control & Pub. Safety*, 618 S.E.2d 201 (N.C. 2005)). Thus, accepting Plaintiff's factual allegations as true, the Court concludes that Plaintiff has sufficiently stated a claim for wrongful discharge, to the extent that such claim is based on an alleged violation of North

19

Carolina's public policies against intimidating or interfering with witnesses, and in favor of citizens' cooperation with law enforcement.

The Court will therefore deny Defendants' motion to dismiss Plaintiff's wrongful discharge claim to the extent that it is based on violations North Carolina's public policies against intimidating or interfering with witnesses, and in favor of citizens' cooperation with law enforcement.

### E. Obstruction of Justice against all Defendants (Claim 5)

Defendants argue that Plaintiff's claim for obstruction of justice should be dismissed because Plaintiff "has not alleged facts sufficient to show obstruction of justice, nor a conspiracy to obstruct justice." (ECF No. 16 at 18.)

North Carolina recognizes a common law claim for obstruction of justice. *In re Kivett*, 309 S.E.2d 442, 462 (N.C. 1983) (permitting a common law cause of action of obstruction of justice to proceed); *see also Burgess v. Busby*, 544 S.E.2d 4, 12–13 (N.C. Ct. App. 2001). "[I]t is an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice." *Burgess*, 544 S.E.2d. at 12 (quoting *In re Kivett*, 309 S.E.2d at 462). Thus, "a complaint alleging that the defendants engaged in such activities states a claim for relief." *Blackburn v. Carbone*, 703 S.E.2d 788, 794 (N.C. Ct. App. 2010). Accordingly, the Court finds that the following allegations regarding Defendants' conduct, taken as true, sufficiently state a claim for common law obstruction of justice:

> (i)     upon learning of Plaintiff's cooperation with law enforcement and the EEOC in their investigations into Kennedy's complaints, Defendant Aldo DiPuorto threatened Plaintiff "on more than one occasion, saying words to the effect: 'if you

20

mess with me, I'll [f***] you up' and 'I'll [f***] your [a**] up' and 'you help that [b****] and I'll [f***] you up,'" (ECF No. 7 ¶ 26);

(ii)     Plaintiff told Defendant Aldo DiPuorto "that she would not lie to the District Attorney for Argueta in the criminal case," to which Aldo DiPuorto responded, "you do what you got to do and I'll nail your [a**]," (*id.*);

(iii)     "Defendant Aldo DiPuorto made multiple threats and statements to Plaintiff in an effort to intimidate and deter her from serving as a witness against Argueta in the criminal matter and the EEOC charge initiated by Kennedy," (*id.* ¶ 49); and

(iv)     "Defendants conspired and agreed with one another to retaliate against and ultimately to wrongfully discharge Plaintiff in an effort to dissuade her from providing truthful information in both such proceedings," (*id.*).

In light of the Court's finding, Defendants' motion to dismiss this claim will be denied.

**F.   Punitive Damages against all Defendants (Claim 6)**

Plaintiff seeks punitive damages in this case. Defendants argue that "Plaintiff's speculations, conclusions, and assertions masquerading as factual allegations do not provide a plausible basis for a claim for punitive damages, and as such, the claim for punitive damages should be dismissed." (ECF No. 16 at 19.)

With respect to Plaintiff's federal claim, a Title VII plaintiff may seek to recover punitive damages against an employer "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42

U.S.C. § 1981a(b)(1). Likewise, as to Plaintiff's state law claims, North Carolina law permits recovery of punitive damages in actions involving fraud, malice or willful and wanton conduct. *See* N.C. Gen. Stat. § 1D-15.

Here, Plaintiff has alleged sufficient facts, (*see* ECF No. 7 ¶¶ 9, 12–22, 24–27, 30), to show that Defendants acted "deliberately, intentionally, purposefully, maliciously, and otherwise in a willful and wanton fashion," (*id.* ¶ 53). The Court finds that the allegations in Plaintiff's Complaint, (*see id.* ¶¶ 9, 12–22, 24–27, 30), taken as true, are sufficient to support Plaintiff's claim for recovery of punitive damages as to the surviving federal and state law claims discussed above. The Court will, therefore, deny Defendants' motion to dismiss Plaintiff's claim for punitive damages.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 15) is GRANTED IN PART AND DENIED IN PART. Defendants' motion is GRANTED as to Plaintiff's claim of vicarious liability against Defendant Owners for tortious interference (Claim 2), and the motion is DENIED as to all remaining claims.

This, the 31st day of March, 2017.


      /s/ Loretta C. Biggs
United States District Judge